Brian J. Wagner (SBN 239981)
KUTAK ROCK LLP
5 Park Plaza, Suite 1500
Irvine, CA  92614-8595
Telephone: (949) 417-0999
Facsimile:  (949) 417-5394
Email:  brian.wagner@kutakrock.com
Authorized E-Service Address:
irvineintake@KutakRock.com

Leland P. Abide (*Pro Hac Vice*)
60 South Sixth St., Suite 3400
Minneapolis, MN 55402
Telephone: (612) 334-5000
Facsimile: (612) 334-5050
Email: leland.abide@kutakrock.com

Attorneys for Plaintiff, Getac, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GETAC, INC., | Case No. 8:25-cv-01472-DOC-(KES) |
| Plaintiff, | District Judge Hon. David O. Carter |
| v. | Magistrate: Karen E. Scott |
| RAMZI ALAFANDI, PAUL EKELEME, PAY EKELEME LLC, EDWIN RIVERA, and DOES 1-10, | **PLAINTIFF'S NOTICE OF MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANTS RAMZI ALAFANDI, PAUL EKELEME, PAY EKELEME LLC, AND EDWIN RIVERA; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| Defendants. | *[Filed concurrently with Declaration of Leland P. Abide, Declaration of Ethan T. Mobley, and Proposed Order]* |
| | Hearing Date:  January 12, 2026 Time:               8:30 A.M. |
| | Complaint Filed:     July 8, 2025 Trial Date:            Not set |

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE THAT** on January 12, 2026, at 8:30 a.m., or as soon thereafter as the matter may be heard by the Honorable David O. Carter, located at 411 West 4th Street, Santa Ana, California, Plaintiff Getac, Inc. will and hereby does move the Court pursuant to Federal Rules of Civil Procedure 55 and 65 for default judgment and entry of a permanent injunction against Defendants Ramzi Alafandi, Paul Ekeleme, Pay Ekeleme LLC, and Edwin Rivera.

This Motion is based on this Notice, the accompanying memorandum of points and authorities, the Declarations of Ethan T. Mobley and Leland P. Abide, the papers and evidence on file, and such further written or oral evidence or arguments as this Court permits.

As set forth in the accompanying Declarations and Memorandum of Points and Authorities, default judgment is appropriate under Fed. R. Civ. P. 55(b)(2) as Defendants Ramzi Alafandi, Paul Ekeleme, Pay Ekeleme, LLC, and Edwin Rivera have failed to answer Plaintiff's Complaint.

Dated November 26, 2025                    KUTAK ROCK LLP


                                           By: */s/ Brian J. Wagner*
                                           Brian J. Wagner
                                           Attorney for Plaintiff Getac, Inc.

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................. 10

II.   FACTUAL BACKGROUND ................................................ 10

    A.    Overview of Defendants' Scheme To Defraud Getac ........................ 11

    B.    The Fraudulent Scheme Directed at Getac ......................................... 12

    C.    Defendants Intercept and Cash Checks Issued to Getac .................... 15

III.  LEGAL STANDARD ......................................................... 16

IV.  ARGUMENT ..................................................................... 17

    A.    Plaintiff Has Satisfied the Procedural Requirements of Default ........ 17

        1.    Jurisdictional Requirements ........................................ 18

            a.    Subject Matter Jurisdiction............................. 18

            b.    Personal Jurisdiction......................................... 19

        2.    The *Eitel* Factors Compel Entry of Default Judgment ............. 23

            a.    Plaintiff Will Be Prejudiced Without Entry of
                  Default Judgment ........................................... 23

            b.    Plaintiff's Claims Are Meritorious and the
                  Complaint Is Sufficiently Pled ....................... 23

            c.    False Designation of Origin ........................... 23

            d.    Unlawful, Unfair and Fraudulent Business
                  Practices........................................................ 26

            e.    Fraud............................................................. 26

            f.    Injunctive Relief ............................................ 28

        3.    The Damages Sought by Getac ................................... 29

        4.    There Is No Possibility of Dispute Regarding Material
            Facts ............................................................... 30

        5.    There Is No Possibility of Excusable Neglect.......................... 31

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT
INJUNCTION

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

6.     Policy for Deciding Case on the Merits .................................. 31

V.     CONCLUSION ............................................................................ 32

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT
INJUNCTION

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Ballard v. Savage*,
 65 F.3d 1495 (9th Cir. 1995)................................................................21

*Blumenthal Distrib., Inc. v. Comoch Inc.*,
 652 F. Supp. 3d 1117 (C.D. Cal. 2023).......................................17, 31

*Brookfield Commc'ns v. W. Coast Entm't Corp.*,
 174 F.3d 1036 (9th Cir. 1999).............................................................24

*Burger King Corp. v. Rudzewicz*,
 471 U.S. 462 (1985) ..............................................................19, 21-22

*Cadence Design Sys., Inc. v. Avant! Corp.*,
 125 F.3d 824 (9th Cir. 1997)...............................................................29

*Calder v. Jones*,
 465 U.S. 783 (1984) ......................................................................20-21

*California Software Inc. v. Reliability Rsch., Inc.*,
 631 F. Supp. 1356 (C.D. Cal. 1986)....................................................21

*Callaway Golf Corp. v. Royal Canadian Golf Ass'n*,
 125 F. Supp. 2d 1194 (C.D. Cal. 2000)...............................................19

*Core-Vent Corp. v. Nobel Indus. AB*,
 11 F.3d 1482 (9th Cir. 1993), *modified on other grounds by Yahoo!*
 *Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d
 1199 (9th Cir. 2006) ............................................................................22

*Daimler AG v. Bauman*,
 571 U.S. 117 (2014) ............................................................................19

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION

Kutak Rock LLP
Attorneys At Law
Irvine

*Data Disc, Inc. v. Systems Tech. Assoc., Inc.*,

    557 F.2d 1280 (9th Cir. 1977) ........................................................... 20

*Eitel v. McCool*,

    782 F.2d 1470 (9th Cir. 1986) ....................................... 17, 23, 29-31

*Elektra Entertainment Group Inc. v. Crawford*,

    226 F.R.D. 388 (C.D. Cal. 2005) ..................................................... 23

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,

    564 U.S. 915 (2011) ......................................................................... 22

*GoTo.Com, Inc. v. Walt Disney Co.*,

    202 F.3d 1199 (9th Cir. 2000) ......................................................... 25

*Jada Toys, Inc. v. Mattel, Inc.*,

    518 F.3d 628 (9th Cir. 2008) ........................................................... 25

*Kendall–Jackson Winery, Ltd. v. E. & J. Gallo Winery*,

    150 F.3d 1042 (9th Cir. 1998) ......................................................... 25

*La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*,

    762 F.3d 867 (9th Cir. 2014) ........................................................... 28

*Laster v. T-Mobile USA, Inc.*,

    407 F. Supp. 2d 1181 (S.D. Cal. 2005) ........................................... 26

*Omeluk v. Langsten Slip*,

    52 F.3d 267 (9th Cir. 1995) ............................................................. 20

*Panavision Int'l, L.P. v. Toeppen*,

    938 F. Supp. 616 (C.D. Cal. 1996), *aff'd*, 141 F.3d 1316 (9th Cir.

    1998) ...................................................................................19-20, 22

*Penpower Tech. Ltd. v. S.P.C. Tech.*,

    627 F. Supp. 2d 1083 (N.D. Cal. 2008) ........................................... 24

*Pepsico, Inc. v. Cal. Sec. Cans*,

    238 F. Supp. 2d 1172 (C.D. Cal. 2002) ................................ 23, 29, 31

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION

*Phillip Morris USA, Inc. v. Castworld Prods., Inc.*,

    219 F.R.D. 494 (C.D. Cal. 2003), *overruled on other grounds by*

    *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179

    (9th Cir. 2016) ........................................................................................ 30

*Prudential Ins. Co. of America v. Gibraltar Financial Corp. of*

    *California*,

    694 F.2d 1150 (9th Cir. 1982) ............................................................... 29

*Swartz v. KPMG LLP*,

    476 F.3d 756 (9th Cir. 2007) (per curiam) ............................................ 27

*TeleVideo Sys., Inc. v. Heidenthal*,

    826 F.2d 915 (9th Cir. 1987) (per curiam) .............................. 17, 23, 30

*In re Tuli*,

    172 F.3d 707 (9th Cir. 1999) .............................................................17-18

*Warner Bros. Entm't Inc. v. Caridi*,

    346 F. Supp. 2d 1068 (C.D. Cal. 2004)...................................17, 29-30

*Wetzel's Pretzels, LLC v. Johnson v. Johnson*,

    797 F. Supp. 2d 1020 (C.D. Cal. 2011)................................................ 28

*Williams v. Yamaha Motor Co.*,

    851 F.3d 1015 (9th Cir. 2017) ............................................................... 22

*World–Wide Volkswagen Corp. v. Woodson*,

    444 U.S. 286 (1980) ............................................................................... 20

*Yelp Inc. v. Catron*,

    70 F. Supp. 3d 1082 (N.D. Cal. 2014)................................................... 29

*Ziegler v. Indian River Cnty.*,

    64 F.3d 470 (9th Cir. 1995) ................................................................... 21

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION

# STATE CASES

*Cel-Tech Comm's, Inc. v. Los Angeles Cellular Telephone Co.*,
    20 Cal. 4th 163 (1999) ........................................................................ 26

*Engalla v. Permanente Med. Grp., Inc.*,
    15 Cal. 4th 951 (1997), *as modified* (July 30, 1997) ........................ 27

*USCHAG Corp. v. Flagstar Bank, FSB*,
    220 A.D.3d 823, 198 N.Y.S.3d 153 (2023). (Compl. ) ..................... 12

# FEDERAL STATUTES

15 U.S.C. § 1116(a) ..................................................................................... 30

15 U.S.C. § 1121 ......................................................................................... 18

15 U.S.C. § 1121(a) ..................................................................................... 18

15 U.S.C. § 1125(a) ..................................................................................... 24

15 U.S.C. § 1125(a)(1) ................................................................................ 24

28 U.S.C. § 1367(a) ..................................................................................... 19

Lanham Act .......................................................................... 18-19, 26, 30

Servicemembers Civil Relief Act ............................................................. 18

# STATE STATUTES

Cal. Bus. & Prof. Code § 17200, *et seq.* .................................................. 26

# OTHER AUTHORITIES

Fed. R. Civ. P. 55 .......................................................................................... 2

Fed. R. Civ. P. 55(a) ................................................................................... 16

Fed. R. Civ. P. 55(b)(2) ................................................................. 2, 10, 16-17

Fed. R. Civ. P. 65 .......................................................................................... 2

Fed. R. Civ. P. 8(b)(6) ................................................................................ 16

https://dos.fl.gov/sunbiz/manage-business/mind-your-

    sunbizness/sunbizness-identity-theft-resource-guide/florida-

    department-of-state-s-duties-and-records/..........................................................14

https://wsvn.com/news/help-me-howard/south-florida-business-owner-

    faces-identity-theft-as-criminal-exploits-state-registry/....................................12

Local Rule 55-1 ...................................................................................................17

Kutak Rock LLP
Attorneys At Law
Irvine

**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This case relates to a fraudulent scheme targeting Getac, Inc. ("Getac" or "Plaintiff"). Through this fraudulent scheme, con artists Paul Ekeleme, Edwin Rivera, and Ramzi Alafandi:

(i)     Created fake corporate documents and filed them with the California Secretary of State, the Florida Division of Corporations, the Mississippi Secretary of State, and the Missouri Secretary of State;

(ii)    Caused Getac's mail to be forwarded to their addresses in California and Florida; and

(iii)   Utilized the fake corporate documents to impersonate Getac, contact its customers, and intercept checks issued to Getac and deposit them into their own bank accounts.

Getac has commenced this action to curb this fraudulent conduct and recover the stolen funds. However, Defendants have completely ignored the legal process and have each failed to respond to the Complaint. Each Defendant is now in default, and Getac thus moves the Court for an Order for Default Judgment against Defendants Ramzi Alafandi, Paul Ekeleme, Pay Ekeleme, LLC, and Edwin Rivera.

Entry of default judgment under Fed. R. Civ. P. 55(b)(2) is appropriate as Defendants have failed to answer Getac's Complaint or otherwise defend this action and Getac has met the requirements for the Court to enter default judgment and award the requested relief.

## II. FACTUAL BACKGROUND

Getac is a multinational technology company providing rugged mobile technology and intelligent video solutions, including tablets, software, body-worn cameras, in-car video, interview rooms, and evidence management software utilized by a wide range of law enforcement agencies and emergency medical services (EMS)

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT
INJUNCTION

operating in Los Angeles and other communities within the district. (ECF Doc. 1 ["Compl."] at ¶ 19; Declaration of Ethan T. Mobley ["Mobley Decl."] at ¶ 3). As part of Getac's business, Getac permissibly utilizes several registered United States trademarks with the wordmark "Getac" in connection with supplying its goods and services across the United States, including trademark registration numbers 2207136, 5389311, and 5344397. (Compl. at ¶ 20; Mobley Decl. ¶ 4). Getac's correspondences and several of its products bear the trademarks. (Compl. at ¶ 21; Mobley Decl. ¶ 4).

Getac has been the subject of a fraudulent scheme perpetrated by the four Defendants: Ramzi Alafandi ("Alafandi"), a resident of California, Paul Ekeleme ("Ekeleme"), a resident of California, Pay Ekeleme LLC ("Pay Ekeleme"), a California limited liability company, and Edwin Rivera ("Rivera"), a resident of Florida (collectively, "Defendants"). (Compl. at ¶¶ 1, 10-13; Mobley Decl. ¶ 5).

**A.     Overview of Defendants' Scheme To Defraud Getac**

Defendants' scheme involved creating false corporate records purporting to belong to Getac and submitting those false corporate records to official state agencies. (Compl. at ¶ 23; Mobley Decl. ¶ 6). In the false corporate records, Defendants: (i) list themselves or others as the corporate officers and/or directors of Getac; (ii) change the corporate address of Getac to a residence they control, or a fake address; and (iii) change contact information for Getac. (Compl. at ¶ 23; Mobley Decl. ¶ 7). For reference, see **Exhibit A** to the Declaration of Ethan T. Mobley, which includes eleven (11) false filings with the California Secretary of State. (Mobley Decl. Ex. A). In addition to the false corporate filings, Defendants have had Getac's mail forwarded to what is believed to be their addresses in California. (Compl. at ¶ 24; Mobley Decl. ¶ 9).

With the falsified corporate documents and access to Getac's mail, Defendants then attempt to profit from the scheme by tricking third parties into making payments to Defendants. (Compl. at ¶ 25; Mobley Decl. ¶ 10). As a result, the victims believe

that they are making payments to Getac, when in reality, they are issuing payment to Defendants. (Compl. at ¶ 25; Mobley Decl. ¶ 11). The structure of this scheme is not new, as public records show that Ekeleme has used this scheme in the past to fraudulently induce a transfer of $81,750 to his company, Pay Ekeleme LLC. *See USCHAG Corp. v. Flagstar Bank, FSB*, 220 A.D.3d 823, 823, 198 N.Y.S.3d 153, 154 (2023). (Compl. at ¶ 26). And, other companies in Florida have reported the same or similar schemes to news outlets.[1] (Compl. at ¶ 26).[2]

## B.    The Fraudulent Scheme Directed at Getac

On October 6, 2023, Getac's mail was fraudulently forwarded from its office in Irvine, California to an address in Victorville, California. (Compl. at ¶ 28; Mobley Decl. ¶ 13). Almost a month later, on November 2, 2023, Getac discovered the mail forwarding and reported the fraud to the United States Postal Service. (Mobley Decl. ¶ 14). After the report was made, Getac was informed that prior to correcting the issue, the mailing address was changed again, but this time to an address in Reunion, Florida. (Compl. at ¶ 30; Mobley Decl. ¶ 15).

Thereafter, on November 27, 2023, a new domestic entity was created with the Florida Secretary of State using the entity name of "Getac Inc." (Compl. at ¶ 31; Mobley Decl. ¶ 16). However, Getac does not have an entity registered in Florida. (Compl. at ¶ 31; Mobley Decl. ¶ 17). Rather, to create this entity, Defendants pretended to be Getac, fabricated documents, and used Getac's true Federal Employer Identification Number. (Compl. at ¶ 31; Mobley Decl. ¶ 17). Upon review of the fake documents, they include Articles of Incorporation naming Rivera as President, Danti Rivera as Vice President, and Laura Wallace as Treasurer. (Compl.

---

[1] *See* https://wsvn.com/news/help-me-howard/south-florida-business-owner-faces-identity-theft-as-criminal-exploits-state-registry/.

[2] Through Getac's investigation, it has been discovered that Defendants have targeted other companies in a similar scheme, including Tyson Foods, Embraer Aircraft, and others. (Compl. at ¶ 27; Mobley Decl. ¶ 12).

at ¶ 31; Mobley Decl. ¶ 18). Notably, the principal address listed on this fake document is Rivera's residence in Reunion, Florida. (Compl. at ¶ 31; Mobley Decl. ¶ 18).

Doubling down on the fraudulent documents and filings, on January 6, 2024 Rivera (signing as the "President" of Getac) filed Articles of Amendment to the Articles of Incorporation through which he removed Danti Rivera and Laura Wallace as officers, and on May 1, 2024, Rivera filed the 2024 Florida Annual Report with the Florida Secretary of State for "Getac Inc." (Compl. at ¶¶ 32-33; Mobley Decl. ¶¶ 19-20, and Ex. B).

Shortly after, on July 5, 2024, a false Statement of Information was filed with the California Secretary of State. (Compl. at ¶ 34; Mobley Decl. ¶ 22). The false document listed Ekeleme as the President, CEO, CFO, and Secretary of Getac, and changed Getac's principal and mailing address to a residence in Adelanto, California. (Compl. at ¶ 34; Mobley Decl. ¶ 23, and Exhibit A). Since this filing, Defendants have changed Getac's business information with the California Secretary of State on at least eleven (11) occasions. (Compl. at ¶ 34; Mobley Decl. ¶ 23, and Ex. A).

On July 30, 2024, Getac discovered the falsified corporate documents with the California Secretary of State and Florida Division of Corporations, which list Ekeleme and Rivera as corporate officers and directors of the company, and falsified Getac's address. (Compl. at ¶ 37; Mobley Decl. ¶ 24). The same day it was discovered, Getac promptly notified the California Secretary of State to notify it of the false Statement of Information listing Ekeleme as an officer and containing the wrong address for Getac. (Compl. at ¶ 38; Mobley Decl. ¶ 25). Getac also asked the California Secretary of State for assistance, but unfortunately was informed by the California Secretary of State's office that anyone can create a basic "bizfile" account and file a new Statement of Information for any entity, at any time, as long as they pay the filing fee, and according to the California Secretary of State, there is no way

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION

to prevent a fraudulent filing because it is "a good faith filing." (Compl. at ¶ 39; Mobley Decl. ¶ 26). The California Secretary of State further advised Getac to notify the Attorney General's office about the fraud. (Compl. at ¶ 39; Mobley Decl. ¶ 26).

In response, Getac did not sit idly by and allow public records to reflect false information. Rather, Getac worked to correct these falsified filings as it submitted a corrected Statement of Information on July 31, 2024. (Compl. at ¶ 40; Mobley Decl. ¶ 27). Despite Getac's efforts, Defendants were undeterred and continued to file the same or similar falsified corporate documents. (Compl. at ¶ 40; Mobley Decl. ¶ 28). As a result, Getac found itself in a continuous back-and-forth battle with Defendants, who kept filing the same statements, sometimes within *hours* of Getac correcting the documents. (Compl. at ¶ 40; Mobley Decl. ¶ 28). Shockingly, the California Secretary of State has refused to "freeze" the account to prevent the fraudulent filings. (Compl. at ¶ 40; Mobley Decl. ¶ 29).

Getac's attempts to correct the fraudulent filings in Florida have fared no better. Specifically, in response to the Florida fraudulent filings, Getac drafted a Statement of Fact that corrected the false information and informed the public as to Getac's actual officers and address. (Compl. at ¶ 41; Mobley Decl. ¶ 30). This submission of the Statement of Fact was suggested by the Florida Division of Corporations to correct false business records.[3] Despite publishing the Statement of Fact, the inaccurate information remains visible to the public. (Compl. at ¶ 42; Mobley Decl. ¶ 30).

In addition to false filings in California and Florida, false documents have also been filed with the Missouri and Mississippi Secretary of State. (Compl. at ¶¶ 35-36; Mobley Decl. ¶ 31). Specifically, on February 26, 2025, a new domestic entity was created with the Missouri Secretary of State using the entity name of "Getac Inc."

---

[3] *See* https://dos.fl.gov/sunbiz/manage-business/mind-your-sunbizness/sunbizness-identity-theft-resource-guide/florida-department-of-state-s-duties-and-records/

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION

(Compl. at ¶ 35; Mobley Decl. ¶ 32). However, Getac does not have an entity registered in Missouri, and thus this document is completely fabricated. (Compl. at ¶ 35; Mobley Decl. ¶ 32). The fake documents include Articles of Incorporation naming Edward Rodriguez as the Registered Agent and Incorporator of this entity. (Compl. at ¶ 35; Mobley Decl. ¶ 32). A copy of the false Missouri filing is attached as Exhibit D to the Declaration of Ethan T. Mobley. (Mobley Decl. Ex. D).

Likewise, on May 7, 2025, a falsified Annual Report was filed with the Mississippi Secretary of State. (Compl. at ¶ 36; Mobley Decl. ¶ 34). The falsified document listed Anthony Cella as the President and Sonny Lee as the Chief Executive Officer. (Compl. at ¶ 36; Mobley Decl. ¶ 34). To send the document to the Mississippi Secretary of State, Defendants used the email address of "info@getacusa.com", which is intended to impersonate Getac. (Compl. at ¶ 36; Mobley Decl. ¶ 34). They also changed Getac's NAICS code. (Compl. at ¶ 36; Mobley Decl. ¶ 34). A copy of the false Mississippi filing is attached as Exhibit E to the Declaration of Ethan T. Mobley. (Mobley Decl. Ex. E).

Despite Getac's best efforts to correct the fake filings and stop the improper forwarding of its mail, the fraud continued into 2025. (Compl. at ¶ 43; Mobley Decl. at ¶ 36).

## C. Defendants Intercept and Cash Checks Issued to Getac

In March 2025, Getac discovered that certain checks that had been mailed to its Irvine office had been intercepted and deposited into a Fidelity brokerage account ending in 8703. (Compl. ¶ 44; Mobley Decl. ¶ 37). This brokerage account is not associated with Getac. On the back of one of the stolen checks, it reads "For Deposit **Ramzi Alafandi** only to Fidelity Account: XXXX8703[.]" (Compl. ¶ 43; Mobley Decl. ¶ 38; Mobley Decl. Ex. F) (emphasis supplied). To date, Getac is aware of seven (7) checks from customers that have been intercepted. (Compl. ¶ 46; Mobley Decl. ¶ 38). In five of the seven cases, Getac was able to stop payment on the checks

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION

prior to deposit. (Compl. ¶ 46; Mobley Decl. ¶ 39). However, Defendants were able to deposit a check issued to Getac in the amount of $799.95 on February 14, 2025 and a check in the amount of $999.95 on February 14, 2025. (Compl. ¶ 47; Mobley Decl. ¶ 39).

In addition to intercepting checks, Defendants have used fake names claiming to be officers of Getac, have placed calls to Getac's customers asking about the status of invoices and checks issued, and have also asked customers to redirect checks so that they could be intercepted by Defendants. (Compl. ¶ 48).

Additionally, in April of 2025 Defendants nearly intercepted a tax refund check issued by the Internal Revenue Service to Getac Inc. (Compl. ¶ 50; Mobley Decl. ¶ 40). Defendants impersonated Getac's President in an attempt to change its IRS mailing address on multiple occasions in furtherance of their scheme. (Compl. ¶ 50; Mobley Decl. ¶ 40). Fortunately, alerted to potential fraud, the IRS withheld a tax refund check for more than $230,340 that otherwise would have ended up in the hands of Defendants. (Compl. ¶ 50; Mobley Decl. ¶ 40).

As a result of the fraudulent scheme, Getac has reported the fraud to the California Attorney General, the Florida Attorney General, the Irvine Police Department, the USPS Office of Inspector General, and the FBI cybercrimes unit. (Compl. ¶ 51; Mobley Decl. ¶ 41). To date, no law enforcement action has been taken against Defendants. (Compl. ¶ 51; Mobley Decl. ¶ 41). As a result, Getac seeks judicial intervention to prevent further fraud.

## III.  LEGAL STANDARD

Fed. R. Civ. P. 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  After the Clerk enters default, a party may apply to the court for a default judgment. Fed. R. Civ. P. 55(b)(2). Pursuant to Fed. R. Civ. P. 8(b)(6), "[a]n allegation--other than

one relating to the amount of damages--is admitted if a responsive pleading is required and the allegation is not denied." As such, on a default judgment motion, the Court must accept the factual allegations in the operative complaint as true; however, the Court need not accept the allegations as to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam).

It is within the Court's discretion to grant default judgment. *Warner Bros. Entm't Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1071 (C.D. Cal. 2004). And, prior to entering default judgment against a non-appearing party, the Court must examine its jurisdiction over the subject matter and parties. *Blumenthal Distrib., Inc. v. Comoch Inc.*, 652 F. Supp. 3d 1117, 1126 (C.D. Cal. 2023) (citing *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999)). Pursuant to Ninth Circuit precedent, a court may consider certain factors in analyzing whether to enter default judgment, including: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

## IV.  ARGUMENT

### A.    Plaintiff Has Satisfied the Procedural Requirements of Default

In compliance with Local Rule 55-1 and Federal Rule of Civil Procedure 55(b)(2), Plaintiff's motion for default judgment is supported by the Declaration of Leland P. Abide ("Abide Decl."), which establishes that:

- Plaintiff Getac, Inc. initiated this action on July 8, 2025. (ECF No. 1; Abide Decl. ¶ 3).

- On July 25, 2025, Edwin Rivera was personally served with the

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION

Summons and Complaint. (ECF No. 16; Abide Decl. ¶ 6).

- On July 29, 2025, Defendants Paul Ekeleme and Pay Ekeleme, LLC were personally served with the Summons and Complaint. (ECF Nos. 14, 15; Abide Decl. ¶¶ 4-5).

- On September 6, 2025, the Clerk of Court entered default against Defendants Paul Ekeleme and Pay Ekeleme, LLC. (ECF No. 23; Abide Decl. ¶ 7).

- On September 20, 2025, the Clerk of Court entered default against Defendant Rivera. (ECF No. 28; Abide Decl. ¶ 8).

- On October 16, 2025, Defendant Alafandi was served with the Summons and Complaint via email as allowed by the Court. (ECF Doc. 31; Abide Decl. ¶9 ).

- On November 10, 2025, the Clerk of Court entered default against Defendant Alafandi. (ECF Doc. 33; Abide Decl. ¶ 10).

- Plaintiff is mailing the instant Motion and accompanying documents to Defendants Rivera, Ekeleme, and Pay Ekeleme, and serving via email on Defendant Alafandi. (Abide Decl. ¶ 11).

- Defendants are not infants, incompetent persons, or subject to the Servicemembers Civil Relief Act. (*Id.* ¶12).

## 1. *Jurisdictional Requirements*

Before entering default judgment against a non-appearing party, district courts have an affirmative duty to consider subject matter jurisdiction, personal jurisdiction, and service. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

### a. *Subject Matter Jurisdiction*

The Court has subject matter jurisdiction under the Lanham Act pursuant to 15 U.S.C. § 1121. *See* 15 U.S.C. § 1121(a) ("The district and territorial courts of the United States shall have original jurisdiction ... of all actions arising under this

chapter [of the Lanham Act], without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties."). As a result, the Court also has supplemental jurisdiction over the related state law claims. *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").[4]

b.     *Personal Jurisdiction*

The Court has personal jurisdiction over Defendants. Personal jurisdiction over a non-resident defendant may be either general or specific. *Callaway Golf Corp. v. Royal Canadian Golf Ass'n*, 125 F. Supp. 2d 1194, 1199 (C.D. Cal. 2000). For individuals, such as Ekeleme, the "paradigm forum for the exercise of general jurisdiction is the individual's domicile…." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Ekeleme and Alafandi are natural persons residing in San Bernardino County, and Los Angeles, County California, granting this Court general personal jurisdiction over Ekeleme. (Compl. ¶¶ 10- 11).

Additionally, the Court has specific personal jurisdiction over Defendant Rivera. Specific jurisdiction arises when a defendant's contacts with the forum state are the activities giving rise to the litigation. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477–78 (1985). "The defendant need not ever have been physically present in the forum state for specific jurisdiction to apply." *Panavision Int'l, L.P. v. Toeppen*, 938 F. Supp. 616, 620 (C.D. Cal. 1996), *aff'd*, 141 F.3d 1316 (9th Cir. 1998)(citation omitted). The Court of Appeals for the Ninth Circuit applies a three-part test to determine if a defendant's contacts are sufficiently related to the forum state to permit a district court to exercise specific jurisdiction, which requires that:

---

[4] Plaintiff plead seven causes of action in its Complaint but is not seeking default judgment on its second, fourth, or sixth causes of action.

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION

"(1) the nonresident defendant do some act . . . by which he purposely avails himself of the privilege of conducting activities in the forum . . .; (2) the claim must be one which arises out of or results from defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable." *Omeluk v. Langsten Slip*, 52 F.3d 267, 270 (9th Cir. 1995) (quoting *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977)).

To pass the "purposeful availment" prong, "it must be foreseeable that the defendant's conduct and connection with the forum state are such that the defendant should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980). The "purposeful availment" test differs depending upon the underlying cause of action, however in the tort setting, jurisdiction "can be predicated on (1) intentional actions (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered—and which the defendant knows is likely to be suffered—in the forum state" which is also known as the "effects test." *Panavision Int'l, L.P*, 938 F. Supp. at 621. The "effects test" was established in *Calder v. Jones*, 465 U.S. 783 (1984). In *Calder*, the Court held that a reporter and an editor, both Florida residents, were subject to personal jurisdiction in California for an allegedly defamatory article that they had written for publication in a national magazine. The Court held that jurisdiction in California was proper because California was "the focal point of both the story and of the harm suffered." *Id.* at 789.

Under the "effects doctrine," Rivera is subject to personal jurisdiction in California. Here, much like *Calder*, Rivera directed activities towards California by (i) changing Plaintiff, a California corporations mailing address, and (ii) impersonating that he was an officer of a California corporation. Specifically, after Plaintiff discovered the mail forwarding and reported the fraud to the United States Postal Service, Getac was informed that prior to correcting the issue,

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION

the mailing address was changed again to an address in Reunion, Florida. (Mobley Dec. at ¶¶ 14-15). While the United States Postal Service did not confirm the exact address, a fraudulent document filed in Florida and signed by Rivera, represented that Rivera was the President of "GETAC INC" and was the incorporator of this company. (*See* Mobley Dec. at Ex. B). Notably, this false filing gave the address of 1000 Castle Pines Ct., Reunion Florida, 34747 as "GETAC INC['s]" principal place of business and this was the address Rivera was personally served in this action. (ECF No. 16). As such, Rivera expressly aimed his conduct toward California. Finally, Rivera has harmed Getac, the brunt of which Getac has borne in California, which Rivera knew would likely happen because Getac's principal place of business is in California.

Rivera's actions are anything but "random, fortuitous or attenuated." *Burger King*, 471 U.S. at 476. He has not engaged in "untargeted negligence" but has "expressly aimed" his tortious activities toward California. *Calder*, 465 U.S. at 790. Jurisdiction is proper because Rivera's out of state conduct was intended to, and did, result in harmful effects in California. Getac should not now be forced to go to Florida to litigate its claims. *Id.*; *see also California Software Inc. v. Reliability Rsch., Inc.*, 631 F. Supp. 1356, 1361 (C.D. Cal. 1986) (holding that jurisdiction could be based on out-of-state communications made to out-of-state residents when the communications "were expressly calculated to cause injury in California").

Courts in the Ninth Circuit follow a "but for" analysis for the second prong of the test. *See Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). That is, if the plaintiff would not have suffered loss "but for" the defendant's forum-related activities, courts hold that the claim arises out of the defendant's forum-related activities. *See Ziegler v. Indian River Cnty.*, 64 F.3d 470, 474 (9th Cir. 1995). Here, "but for" Rivera's conduct in changing Getac's mailing address, Getac would not have been injured.

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION

The third prong or the "reasonableness" prong requires that court's exercise of jurisdiction comport with "fair play and substantial justice." *Burger King*, 471 U.S. at 477–78. The factors that the court must consider are: (1) the extent of defendant's "purposeful" interjection; (2) the burden on defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *See id.* at 476–77. No one factor is dispositive: the court must balance all seven. *Panavision Int'l, L.P*, 938 F. Supp. at 622. In the tort setting:

> "[i]f a nonresident, acting outside the state, intentionally causes injuries within the state, local jurisdiction is *presumptively not unreasonable*: 'Where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that ... would render jurisdiction unreasonable.'"

*Panavision Int'l, L.P*, 938 F. Supp. at 622 (quoting *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482 (9th Cir. 1993), *modified on other grounds by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006)). Analysis of the seven factors from *Burger King*, it is clear that jurisdiction over Rivera comports with "fair play and substantial justice." *Burger King*, 471 U.S. at 477–78. Rivera's actions targeted toward a California business give rise for the pending lawsuit. California has an interest in this litigation to afford protection to a California business.

Finally, for corporate entities, the typical circumstances for general jurisdiction are the state where the corporate entity is incorporated or where its principal place of business is located. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564

U.S. 915, 924 (2011)). Here, Pay Ekeleme, LLC is a California limited liability company based in Adelanto, California, granting this Court general personal jurisdiction over the entity. Compl. ¶ 12. Thus, the Court has personal jurisdiction over all Defendants.

### 2.    The *Eitel* Factors Compel Entry of Default Judgment

The *Eitel* factors weigh decisively in favor of entering default judgment against Defendants. Defendants intentionally and fraudulently caused Plaintiff's business contact information to be modified, and confidential business mailings to be intercepted, including but not limited to checks payable to Getac, Inc.

####    a.    *Plaintiff Will Be Prejudiced Without Entry of Default Judgment*

As to the first factor, without entry of default judgment Plaintiff will suffer severe prejudice because it will be unable to otherwise stop Defendants' fraudulent behavior, and therefore will have no remedy. *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Absent entry of default judgment, Getac will be without relief from the fraudulent, ongoing activities of Defendants. Thus, the first factor supports entry of default.

####    b.    *Plaintiff's Claims Are Meritorious and the Complaint Is Sufficiently Pled*

The second and third *Eitel* factors are commonly analyzed together and require plaintiff to "state a claim on which the [plaintiff] may recover." *Elektra Entertainment Group Inc. v. Crawford*, 226 F.R.D. 388 (C.D. Cal. 2005) (quoting *PepsiCo, Inc.*, 238 F. Supp. 2d at 1175). After a default has been entered by the court clerk, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). Getac's detailed Complaint establishes Defendants Ramzi Alafandi, Paul Ekeleme, Pay Ekeleme, LLC and Edwin Rivera's liability.

c.    _False Designation of Origin_

Plaintiff asserts a federal unfair competition claim against Defendants based on false designation of origin and false description pursuant to 15 U.S.C. § 1125(a). This section provides:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation or origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125(a)(1). The statute further provides that a civil action may be brought "by any person who believes that he or she is likely to be damages by such act." _Id._ Getac legally does business across the United States under its name and logo, and has already been harmed by the deceptive acts of Defendants. In particular, Getac has had to consistently monitor secretary of state websites in states across the county for fraudulent filings, pay filing fees to correct the false information, and devote significant employee time to correcting the issue, including talking with customers who were asked to redirect checks from Getac. Getac also believes that it is at significant risk of reputational harm as a result of the fraud, which may deter customers or other vendors from working with Getac.

Some courts have treated the elements for Plaintiff's trademark infringement and false designation of origin claim as the same. _See Brookfield Commc'ns v. W. Coast Entm't Corp._, 174 F.3d 1036, 1046 n.6 (9th Cir. 1999). Others have indicated that a plaintiff merely must allege that a defendant used in commerce a

word, term, name, symbol, or device or a false designation of origin that is likely to
cause confusion. *See Penpower Tech. Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083,
1089 (N.D. Cal. 2008). Under either formulation, Plaintiff has properly made out a
claim for false designation.

Under a trademark infringement formulation, the key inquiry is "whether an
alleged trademark infringer's use of a mark creates a likelihood that the consuming
public will be confused as to who makes what product." *Jada Toys, Inc. v. Mattel,
Inc.*, 518 F.3d 628, 632 (9th Cir. 2008) (citation and internal quotation marks
omitted). The Ninth Circuit has "developed eight factors, the so-called *Sleekcraft*
factors, to guide the determination of a likelihood of confusion." *GoTo.Com, Inc. v.
Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000). These factors are:

> "(1) the similarity of the marks; (2) the relatedness of the two
> companies' services; (3) the marketing channel used; (4) the strength of
> [Plaintiff's] mark; (5) [Defendants'] intent in selecting its mark; (6)
> evidence of actual confusion; (7) the likelihood of expansion into other
> markets; and (8) the degree of care likely to be exercised by purchasers."

*Id.* "In the context of the Web in particular, the three most important *Sleekcraft*
factors are (1) the similarity of the marks, (2) the relatedness of the goods or services,
and (3) the simultaneous use of the Web as a marketing channel." *Id.* (citation and
internal quotation marks omitted). Additionally, "proof of intent to cause confusion
is entitled to *great weight*." *Kendall–Jackson Winery, Ltd. v. E. & J. Gallo Winery*,
150 F.3d 1042, 1052 n.11 (9th Cir. 1998).

Overall, the application of the *Sleekcraft* factors to the allegations in Plaintiff's
Complaint, taken as true, suggest a high likelihood of confusion. The marks used by
Defendants in connection with their falsified correspondence to third parties and
fraudulent business filings included the "Getac" name. (Compl. ¶ 56). The "Getac"
name used on these documents was identical to Plaintiff's "Getac" logo. *Id.*

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT
INJUNCTION

Defendants intentionally used Plaintiff's trade name to confuse Getac's existing customers so those customers would send payments to Defendants rather than Getac. (Compl. ¶ 58). Plaintiff also pled that Defendants' use of the Getac name is likely to cause confusion, mistake or deception as they are using the actual Getac name and logo in correspondence as well as manipulated business filings in at least four states to make the correspondence appear legitimate. (Compl. ¶ 59). Based only on the allegations of the Complaint, the three most important *Sleekcraft* factors in the context of Internet infringement, together with Defendants' intent to cause confusion, suggest a high likelihood of confusion. Therefore, Plaintiff has adequately pled its trademark infringement claim and is likely to succeed on the merits.

### d.     *Unlawful, Unfair and Fraudulent Business Practices*

California's Business & Professional Code § 17200, also known as the Unfair Competition Law ("UCL"), prohibits, *inter alia*, "unlawful, unfair or fraudulent business act[s]." Cal. Bus. & Prof. Code § 17200, *et seq.* To make a claim under the UCL, a plaintiff must allege that (1) defendant engaged in acts prohibited by the statute and that (2) plaintiff suffered actual injury as a result of defendant's actions. *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005). The statute defines "unfair competition" as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising ...." Cal. Bus. & Prof. Code § 17200, *et seq.*

An "unlawful business act or practice" is one that violates any other federal or state statute or common law. *See Cel-Tech Comm's, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999). Plaintiff's claim under the UCL incorporated all of its prior claims. (Compl. ¶ 81). Because that incorporation includes a claim for federal statutory trademark infringement under the Lanham Act, for which Plaintiff has previously analyzed, Plaintiff has alleged sufficient facts to grant default judgment against Defendants on this claim.

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION

e. _Fraud_

Plaintiff also pled a fraud cause of action. "The elements of fraud are (1) misrepresentation; (2) knowledge of falsity; (3) 'intent to defraud, i.e., to induce reliance;' (4) justifiable reliance; and (5) resulting damage." _Engalla v. Permanente Med. Grp., Inc._, 15 Cal. 4th 951, 974 (1997), _as modified_ (July 30, 1997). Pleading a claim for relief for fraud requires "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." _Swartz v. KPMG LLP_, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks omitted).

Here, Plaintiff meets the heightened pleading requirement through the allegations in its Complaint. Defendants have made false statements to the California Secretary of State, the Florida Division of Corporations, the Mississippi Secretary of State, the Missouri Secretary of State, and the public through their misrepresentations that they are the corporate officers of Getac. (Compl. ¶ 90). On November 27, 2023, Defendants filed falsified Electronic Articles of Incorporation for Getac, Inc. (Compl. ¶ 31; Exhibit B). On July 5, 2024, a false Statement of Information was filed with the State of California, listing Ekeleme as the President, Chief Executive Officer, Chief Financial Officer, and Secretary. (Compl. ¶ 34; Exhibit A). Defendants knew these representations were false. (Compl. ¶ 91). Defendants made the false statement for the purpose of inducing third parties to send money to Defendants under the false pretense that the money was being sent to Getac. (Compl. ¶¶ 44, 92). Further, Defendants used fake names and claimed to be officers of Getac by placing calls to Getac's customers asking about the status of invoices and asking customers to redirect checks so that Defendants could intercept the money. (Compl. ¶ 48). Those in charge of forwarding the payments relied on these falsified documents as they sent checks to the fraudulently listed business address. (Compl. ¶¶ 44, 46- 48). To date, Getac is aware of $1,799.90 that was improperly taken by Defendants from Getac as

a result of Defendants' fraudulent misrepresentations. (Compl. ¶ 47). Getac has and will continue to suffer damages absent entry of a permanent injunction in the matter.

### f.    *Injunctive Relief*

A party seeking a permanent injunction must demonstrate:

"(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."

*La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014) (citations omitted). Plaintiff seeks an order that Defendants be permanently enjoined from engaging or continuing to engage in the unlawful and fraudulent conduct as described herein. (Compl., Prayer for Relief ¶ 1). Plaintiff further seeks entry of an order that Defendants immediately cause the fraudulent business filings to be removed. (Compl., Prayer for Relief ¶ 2).

First, Plaintiff has shown that it is likely to suffer irreparable harm in the absence of an injunction. Any continuing infringement of Plaintiff's rights over its business filings and trademarks will likely undermine the value of those works, harm Plaintiff's business model, and damage Plaintiff's reputation in the industry. (Compl. ¶¶ 102-103). *See Wetzel's Pretzels, LLC v. Johnson v. Johnson*, 797 F. Supp. 2d 1020, 1028 (C.D. Cal. 2011) (finding irreparable harm where Plaintiff's "ability to control its reputation and goodwill associated with [its] marks [would] be significantly reduced" in the absence of an injunction).

Second, monetary damages will not fully compensate Plaintiff for the harm caused by Defendants' fraudulent actions. Defendants' history of fraudulent behavior shows that they are likely to engage in further falsified filings and fraudulent correspondence absent an injunction. If Defendants are not enjoined, they may

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION

simply continue to file fraudulent business filings with official government entities (as they did in the past). (Compl. ¶ 34). Defendants' non-appearance in this case combined with Defendants' history of willful actions of filing fraudulent documents compel the finding of a significant threat of future fraudulent behavior.

Third, the balance of hardships favors Plaintiff because, without an injunction, it will continue to lose profits and suffer harm in its business dealings, while an injunction will simply prohibit Defendants from making false representations to official agencies and third parties. *See Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 829 (9th Cir. 1997) ("In this circuit ... a defendant who knowingly infringes another's copyright cannot complain of the harm that will befall it when properly forced to desist from its infringing activities").

Finally, the public interest factor tips in favor of Plaintiff because the courts have an interest in protecting not only the victim of fraudulent actions but the general public as well who may be impacted by fraudulent misrepresentations. *See Prudential Ins. Co. of America v. Gibraltar Financial Corp. of California*, 694 F.2d 1150, 1154 (9th Cir. 1982) ("The [Lanham] Act protects against fraud and consumer confusion"). It is thus clear that the statute is intended to benefit not only individual trademark holders, but also the general public. Plaintiff has therefore shown that it is entitled to entry of a permanent injunction enjoining Defendants from further infringements of its mark.

### 3.    *The Damages Sought by Getac*

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176; *see also Eitel*, 782 F.2d at 1471–72. "[W]hen the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1100 (N.D. Cal. 2014). Where the harm has the potential to continue and its full magnitude cannot be quantified,

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION

this factor also weighs in favor of default judgment. *See Caridi*, 346 F. Supp. 2d at 1072.

Here, Plaintiff seeks monetary judgment against only Defendant Alafandi in the amount of $1,799.90, plus interest on the amount owed until the judgment is paid in full for the two Getac checks intercepted and deposited "For Deposit Ramzi Alafandi only to Fidelity Account…." (Mobley Decl. ¶¶ 37, 39, Ex. F). Thus, the sum Plaintiff seeks is directly related to the monetary amount of the checks written to Getac. This factor weighs in favor of default judgment.

Plaintiff also seeks permanent injunctive relief against all Defendants relating to further fraudulent actions. Under the Lanham Act, the Court has the "power to grant injunctions according to the rules of equity and upon such terms as the court may deem reasonable, to prevent violation" of Plaintiff's rights. 15 U.S.C. § 1116(a). Here, Plaintiff requests that the Court issue a permanent injunction precluding Defendants from using all of the Marks, representing to the public that Defendants have a legal right to the Marks. *See Caridi*, 346 F. Supp. 2d 1068, 1073 (C.D. Cal. 2004) (Issuing permanent injunction on a default judgment where liability had been established against a non-appearing party and there was a threat of continuing violations.). As such, permanent injunction against all defendants is warranted and this factor weighs in favor of entering default judgment.

### 4. *There Is No Possibility of Dispute Regarding Material Facts*

The fifth *Eitel* factor requires the Court to consider the possibility of a dispute as to a material fact. *Eitel*, 782 at 1471-72. A defendant's failure to respond to a complaint indicates that "the likelihood that any genuine issue may exist is, at best, remote." *Phillip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003), *overruled on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179 (9th Cir. 2016). Here, there is no possible dispute concerning the material facts as Defendants have intentionally defaulted; therefore,

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION

the factual allegations of the Complaint are taken as true. *See TeleVideo Sys., Inc.*, 826 F.2d at 917–18. As a result, this factor weighs in favor of granting default judgment.

### 5.     There Is No Possibility of Excusable Neglect

Under the sixth *Eitel* factor, the Court considers whether Defendants' default resulted from excusable neglect. *Eitel*, 782 F.2d at 1471-72. "Where a defendant is 'properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion,' the default 'cannot be attributed to excusable neglect.'" *Blumenthal Distrib., Inc.*, 652 F. Supp. 3d at 1131 (citation omitted).

Here, Defendants have each been served copies of the Complaint as well as the instant motion and its accompanying documents. (Abide Decl. ¶¶ 4-6, 9). As such, this factor weighs in favor of granting Plaintiff's Motion.

### 6.     Policy for Deciding Case on the Merits

"Under the seventh *Eitel* factor, the court takes into account the strong policy favoring decisions on the merits." *See Eitel*, 782 F.2d at 1472 ("Cases should be decided upon their merits whenever reasonably possible."). However, "this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177. "[W]hen a defendant's failure to appear and respond makes a decision on the merits impractical, if not impossible, default judgment is appropriate" "[n]otwithstanding the strong policy presumption in favor of a decision on the merits." *Blumenthal Distrib., Inc.*, 652 F. Supp. 3d at 1131. Here, the only reason this lawsuit cannot proceed to the merits is because Defendants have decided not to defend it. Thus, this factor weighs in favor of granting Plaintiff's Motion.

///

///

///

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION

1   **V.  CONCLUSION**

2         Plaintiff respectfully requests that the Court enter default judgment against

3   Defendants as set forth in the concurrently filed proposed judgment and injunction.

4

5   Dated:  November 26, 2025         KUTAK ROCK LLP

6

7                      By: */s/ Brian J. Wagner*

8                        Brian J. Wagner
                         Attorney for Plaintiff

9                        Getac, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff Getac, Inc certifies that this brief

contains 6,996 words, which complies with the word limit of L.R. 11-6.1.

Dated:  November 26, 2025                    KUTAK ROCK LLP

By: */s/ Brian J. Wagner*
          Brian J. Wagner
          Attorney for Plaintiff
          Getac, Inc.

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

*Getac, Inc. v. Ramzi Alafandi, et al.*

United States District Court, Case No.: 8:25-cv-01472-DOC-(KES)

STATE OF CALIFORNIA, COUNTY OF ORANGE

    I am employed in the City of Irvine in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 5 Park Plaza, Suite 1500, Irvine, California 92614-8595.

    On **November 26, 2025**, I served on all interested parties as identified on the below service list the following document(s) described as:

**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANTS PAUL EKELEME, PAY EKELEME LLC AND EDWIN RIVERA; [PROPOSED] ORDER**

☒    **(BY EMAIL)** Pursuant to California Rule of Court 2.251(b)(1)(b) and C.C.P. Section 1010.6, the above document was served electronically on the parties appearing on the service list associated with this case at their respective email addresses. A copy of the electronic mail transmission[s] will be maintained with the proof of service document.

## SERVICE LIST

| Ramzi Alafandi | Defendant |
|---|---|
| smc55951716@gmail.com<br>ramzi@kenzimanagement.com<br>fdouglas@cox.net | |

/// 

/// 

/// 

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

PROOF OF SERVICE

☒     **(BY OVERNIGHT DELIVERY/COURIER)** I delivered an envelope or package to a courier or driver authorized by the express service carrier; or deposited such envelope or package to a regularly maintained drop box or facility to receive documents by the express service carrier with delivery fees provided for.

## SERVICE LIST

| | |
|---|---|
| Paul Ekeleme<br>16764 Desert Lily St.<br>Victorville, CA, 92394 | Defendant |
| Pay Ekeleme LLC<br>17725 Twister Ct.<br>Adelanto, CA  92301 | Defendant |
| Edwin Rivera<br>1000 Castle Pines Ct.<br>Reunion, FL 34747 | Defendant |

[X]    **(FEDERAL)**  I declare that I am employed in the office of a member of the bar of this Court at whose direction service was made.

Executed on **November 26, 2025**, at Irvine, California.

_____
Mary Clark