UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01472-DOC-KES                                     Date: January 8, 2026

Title: Getac, Inc. v. Alafandi et al

---

PRESENT: THE HONORABLE DAVID O. CARTER, JUDGE

| Priscilla Deason for Karlen Dubon | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

---

**PROCEEDINGS (IN CHAMBERS):    ORDER GRANTING MOTION FOR DEFAULT JUDGMENT [35]**

Before the Court is Plaintiff Getac, Inc. ("Plaintiff" or "Getac") Motion for Default Judgment ("Motion") (Dkt. 35) against Defendants Ramzi Alafandi ("Alafandi"), Paul Ekeleme ("Ekeleme"), Pay Ekeleme LLC ("Pay Ekeleme"), and Edwin Rivera ("Rivera") (collectively, "Defendant"). The Court finds this matter appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7-15. After considering all relevant filings, the Court **GRANTS** the Motion for Default Judgment and **VACATES** the hearing scheduled for January 12, 2026.

**I.    Background**

**A.    Facts**

The following facts are drawn from Plaintiffs' Complaint ("Complaint") (Dkt. 1), unless they relate to damages.

Plaintiff is a multinational technology company providing rugged mobile technology and intelligent video solutions, including tablets, software, body-worn cameras, in-car video, interview rooms, and evidence management software utilized by a wide range of law enforcement agencies and emergency medical services (EMS). Complaint ("Compl.") ¶ 19). Getac utilizes several registered United States trademarks

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. 8:25-cv-01472-DOC-KES | Date: January 8, 2026 |

Page 2

with the wordmark "Getac" in connection with supplying its goods and services across the United States, including trademark registration numbers 2207136, 5389311, and 5344397. *Id.* ¶ 20. Correspondences sent by Plaintiff and its products often use its trademarks. *Id.* ¶ 21.

Getac claims it has been the subject of a fraudulent scheme perpetrated by the four Defendants: Alafandi, a resident of California, Ekeleme, a resident of California, Pay Ekeleme, a California limited liability company, and Rivera, a resident of Florida. *Id.* ¶¶ 1, 10-13.

Defendants' scheme involved submitting false corporate records to official state agencies by claiming that they are corporate officers and/or directors of Getac. *Id.* ¶ 23. In these submissions, Defendants sought to change the corporate address of Getac to a residence they control or a fake address, and change contact information for Getac. *Id.* Plaintiff provides an example of eleven false filings that Defendant purportedly made with the California Secretary of State. Declaration of Ethan T. Mobley ("Mobley Decl."), Ex. A (Dkt. 35-2). Defendants have also had Getac's mail forwarded to addresses controlled by them. Compl. ¶ 24.

Defendants then used these fraudulent documents to profit from their scheme by having third parties into making payments to them because the payors believe they are making payments to Getac. *Id.* ¶ 25.

On October 6, 2023 Getac's mail was forwarded from its office in Irvine to an address in Victorville, California. *Id.* ¶ 28. Getac eventually discovered and reported this fraud to the U.S. Postal Service. *Id.* ¶ 29. Upon making this report, Getac was informed that its mailing address had been changed again to an address in Reunion, Florida. *Id.* ¶ 30. The Victorville and Reunion addresses were controlled by Defendants. *Id.* ¶¶ 28, 30.

On November 27, 2023, a new domestic entity was created with the Florida Secretary of State using the entity name of "Getac Inc." Compl. ¶ 31. Getac does not actually have an entity registered in Florida, and Defendants pretended to be Getac by fabricating documents and using Getac's true Federal Employer Identification Number. *Id.* These fake documents include Articles of Incorporation naming Edwin Rivera as President, Danti Rivera as Vice President and Laura Wallace as Treasurer and list Getac's principal address as the same address in Reunion, Florida controlled by Defendants. *Id.* In 2024, Rivera then went on to file Articles of Amendment to the Articles of Incorporation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:25-cv-01472-DOC-KES                               Date: January 8, 2026

Page 3

removing Danti Rivera and Laura Wallace as officers, and also filed a 2024 Florida Annual Report. *Id.* ¶¶ 32-33.

Also in 2024, Defendants filed falsified documents with the California Secretary of State listing Ekeleme as the President, CEO, CFO and Secretary of Getac and changing Getac's principal and mailing address to a residence in Adelanto, California. *Id.* ¶ 34. Since this initial filing, Defendants have changed Getac's business information on filed with the California Secretary of State eleven times. *Id.*

In 2025, a new domestic entity was created with the Missouri Secretary of State using the entity name of "Getac Inc," also with fabricated documents. *Id.* ¶ 35. Getac does not actually have an entity registered in Missouri, and the fake documents name Edward Rodriguez as the Registered Agent and Incorporator of this entity. *Id.* There have also been false filings in the state of Mississippi. *Id.* ¶ 36.

On July 30, 2024 Getac discovered the falsified corporate documents in California and Florida and their listing of Ekeleme and Rivera as corporate officers and directors of the company, alongside fake addresses. *Id.* ¶ 37. Getac then reached out to the California Secretary of State and notified it of the fraudulent activity. *Id.* ¶ 38. Getac was informed by the California Secretary of State's office that anyone can create a basic "bizfile" account and file a new Statement of Information, for any entity, at any time, as long as they pay the filing fee. *Id.* ¶ 39. The California Secretary of State further advised Getac to notify the Attorney General's office about the fraud. *Id.*

Getac submitted a corrected Statement of Information on July 31, 2024. *Id.* ¶ 39. Despite this, Defendants continue to file the same or similar falsified corporate documents. *Id.* ¶ 40. As a result, Getac found itself in a continuous back-and-forth battle with Defendants, who kept filing the same statements, sometimes within hours of Getac correcting the documents. *Id.* The California Secretary of State also has not frozen the website to prevent fraudulent filings. *Id.* ¶ 40. Getac has also dealt with similar troubles in Florida, and has been unable to freeze the Florida filing. *Id.* ¶¶ 41-42. Defendants fraudulent activities continued into 2025, despite Getac's efforts to combat them. *Id.* ¶ 43.

In March 2025, Getac discovered that certain checks that had been mailed to its Irvine office had been intercepted and deposited into a Fidelity brokerage account ending in 8703 that is not associated with Plaintiff. *Id.* ¶ 44. To date, Getac is aware of seven checks from customers that have been intercepted. *Id.* ¶ 46. In five of the seven cases,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01472-DOC-KES                                                            Date: January 8, 2026

Page 4

Getac was able to stop payment on the checks prior to deposit. *Id.* However, Defendants were able to deposit a check issued to Getac in the amount of $799.95 on February 14, 2025 and a check in the amount of $999.95 on February 14, 2025. *Id.* ¶ 47.

In addition to intercepting checks, Defendants have used fake names and claimed to be officers of Getac to place calls to Getac customers and ask about the status of invoices and checks issued or ask customers to re-direct checks to different addresses. *Id.* ¶ 48. Defendants also attempted to change Getac's mailing address with the IRS by impersonating Getac's President and nearly intercepted a tax refund check for more than $230,340. *Id.* ¶ 50.

Getac has reported the fraud to the California Attorney General, the Florida Attorney General, the Irvine Police Department, the USPS Office of Inspector General, and the FBI cybercrimes unit, but to date, no law enforcement action has been taken against Defendants. *Id.* ¶ 51

**B.     Procedural History**

On July 8, 2025, Plaintiff filed the Complaint (Dkt. 1). On July 29, 2025, Plaintiff served Rivera with the Complaint and Summons via personal service (Dkt. 16). On July 29, 2025, Plaintiff served Ekeleme and Pay Ekeleme, with the Complaint and Summons via personal service (Dkts. 14-15). On August 8, 2025, Plaintiff filed these proofs of service with the Court. (Dkts. 14-16).

On September 4, 2025, Plaintiff filed a Request for the Clerk to enter default against Ekeleme and Pay Ekeleme (Dkt. 21), which was granted on September 6, 2025, pursuant to Fed. R. Civ. P. 55(a) (Dkt. 23). On September 19, 2025, after an agreed-upon extension to the responsive pleading deadline (Dkt. 25), Plaintiff filed a Request for the Clerk to enter default against Rivera (Dkt. 26), which was granted on September 20, 2025, pursuant to Fed. R. Civ. P. 55(a) (Dkt. 28).

On September 4, 2025, Plaintiff filed a Motion for Alternative Means of Service of the Summons and Complaint on Defendant Alafandi (Dkt. 22). The Court granted Plaintiff's Motion on October 15, 2025, thus authorizing Plaintiff to "serve Alafandi by email to by [sic] email to smc55951716@gmail.com, ramzi@kenzimanagement.com, and by email to Frederic Douglas" (Dkt. 29). Plaintiff served Alafandi with the Complaint and Summons in accordance with the Court's Order on October 16, 2025 (Dkt. 31), and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01472-DOC-KES                                      Date: January 8, 2026

Page 5

filed the proof of service with the Court on October 30, 2025 (Dkt. 31). On November 7, 2025, Plaintiff filed a Request for the Clerk to enter default against Alafandi (Dkt. 32), which was granted on November 10, 2025, pursuant to Fed. R. Civ. P. 55(a) (Dkt. 33).

On November 26, 2025, Plaintiff filed the instant Motion with this Court asking for Default Judgment ("Motion") (Dkt. 35). The Motion and its accompanying documents were served on Defendants by Plaintiff via mail or electronic mail, "in the manner in which each was served with Summons of this action." Declaration of Leland P. Abide ("Abide Decl.") ¶ 11 (Dkt. 35-8).

## II.     Legal Standard

Federal Rule of Civil Procedure 55(b) provides that the Court may, in its discretion, order default judgment following the entry of default by the Clerk. Fed. R. Civ. P. 55(b). Local Rule 55 sets forth procedural requirements that must be satisfied by a party moving for default judgment. C.D. Cal. R. 55. Entry by the Clerk is proper when the amount of damages is "for a sum certain or a sum that can be made certain by computation"; entry by the Court is proper "[i]n all other cases." Fed. R. Civ. P. 55(b). Upon entry of default, the well-pleaded allegations of the complaint are taken as true, with the exception of allegations concerning the amount of damages. *See, e.g.*, *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977). However, "necessary facts not contained in the pleading, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). Where the pleadings are insufficient, the Court may require the moving party to produce evidence in support of the motion for default judgment. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

When deciding whether to enter default judgment, courts consider seven factors:

(1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:25-cv-01472-DOC-KES                              Date: January 8, 2026

Page 6

### III. Discussion

#### A. Procedural Requirement

Plaintiff has satisfied the requirements of Local Rules 55-1 and 55-2 and Federal Rule of Civil Procedure 55(b). Plaintiff requested and received an entry of default against Defendant. (Dkts. 23, 28, 33). Plaintiff properly served Defendant (Dkts. 14-16, 31). Plaintiff also lays out his satisfaction of the requirements of Local Rule 55-1 and 55-2. Abide Decl. ¶¶ 3-12. Having determined Plaintiff's procedural compliance, the Court turns to the substance of Plaintiff's Motion.

#### B. Jurisdiction

The Court agrees with Plaintiff that it has subject matter jurisdiction over this case under the Lanham act and concurrently supplemental jurisdiction over the related state law claims. Mot. at 18-19 (citing 15 U.S.C. § 1121; 28 U.S.C. § 1367(a)).

Turning to personal jurisdiction, the Court has general personal jurisdiction over Alafandi, Ekeleme, and Pay Ekeleme because they are all residents of California. It also has specific personal jurisdiction over Rivera because he purposefully availed himself of California as a forum and jurisdiction here is reasonable. *Omeluk v. Langsten Slip*, 52 F.3d 267, 270 (9th Cir. 1995). Rivera participated in a scheme by changing Plaintiff's mailing address from a California location, and Plaintiff is a California corporation. By attempting to fraudulently usurp a California corporation's rightful place of incorporation and misrepresenting its business, Rivera has targeted California's authority with respect to its control over incorporation status. Thus, Rivera purposefully availed himself of California as a forum and jurisdiction here is reasonable.

#### C. *Eitel* Factors

##### 1. The Possibility of Prejudice to Plaintiffs

The first *Eitel* factor requires the Court to consider the harm to Plaintiff if the Court does not grant default judgment. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Here, without an entry of default judgment, Plaintiff will be prejudiced and denied the right to a judicial resolution of the claims presented. *See id*. Plaintiff also argue that they will be harmed because Defendants' fraudulent behavior

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01472-DOC-KES							Date: January 8, 2026

Page 7

will continue on unabated. Mot. at 23. Accordingly, the Court finds that this factor weighs in favor of default judgment.

### 2. Merits of Claim and Sufficiency of the Complaint

Courts often consider the second and third *Eitel* factors together. *See PepsiCo*, 238 F. Supp. 2d at 1175. The second and third *Eitel* factors favor default judgment where the complaint states a claim for relief. *Id.* at 1177 (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)). In their analyses of the second and third *Eitel* factors, courts accept as true all well-pleaded allegations regarding liability. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

Plaintiff's Complaint and Motion include facts sufficient to establish that Defendants are liable for a federal unfair competition claim based on false designation of origin and false description pursuant to 15 U.S.C. § 1125(a). Plaintiff pled that it has valid trademarks and that Defendants used these trademarks to impersonate Plaintiff and also used Getac's trade name in furtherance of these impersonations. It also pled that Defendants use of these trademarks and Getac's name is likely to cause confusion, and indeed this confusion has been sufficient enough that some of Defendants' impersonation attempts have succeeded.

Plaintiff has also established liability for their Unfair Competition Law ("UCL") and fraud claims. Because Plaintiff has established liability under the Lanham Act, their UCL claim is also valid. Plaintiff's have also established liability under their fraud claims because Defendant's made false representations to several different state officials and misrepresented they were officers of Gerac. They also used these false representations to induce third parties to send them money meant for Plaintiff.

Finally, Plaintiff has established liability under its claim for a permanent injunction. "[A] permanent injunction may be entered where the plaintiff shows: '(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01472-DOC-KES                                                                 Date: January 8, 2026

Page 8

Here, Plaintiff has established that it will suffer irreparable harm because Defendants will continue to fraudulently use Plaintiff's trademarks and name and make misrepresentations by portraying themselves as officers of Plaintiff. *See Wetzel's Pretzels, LLC v. Johnson v. Johnson*, 797 F. Supp. 2d 1020, 1028 (C.D. Cal. 2011). Monetary damages cannot compensate Plaintiff given the continued fraudulent business filings in Plaintiff's name. Third, the balance of hardships favors Plaintiff because it will continue to lose money and suffer reputational harm from Defendants' activities. Finally, the public interest turns in Plaintiff's favor because the public has an active interest in businesses being accurately portrayed and represented in the marketplace.

Therefore, the second and third *Eitel* factors weigh in favor of granting the Motion.

### 3. Sum of Money at Stake

The fourth *Eitel* factor balances "the amount of money at stake in relation to the seriousness of the [d]efendant's conduct." *Pepsico*, 238 F. Supp. 2d at 1176. This requires the court to assess whether the recovery sought is proportional to the harm caused by defendant's conduct. *See Walters v. Statewide Concrete Barrier, Inc.*, No. 04-cv-2559-JSW, 2006 WL 2527776, *4 (N.D. Cal. Aug. 30, 2006). "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014).

Here, Plaintiff only "seeks monetary judgment against only Defendant Alafandi in the amount of $1,799.90, plus interest on the amount owed until the judgment is paid in full for the two Getac checks intercepted and deposited." Mot. at 30. Plaintiff also seeks a permanent injunction, which is warranted as laid out above. Accordingly, this factor weighs in favor of default judgment.

### 4. Possibility of Dispute Concerning Material Facts

The fifth *Eitel* factor requires the Court to consider the possibility of dispute about material facts in the case. Where a plaintiff's complaint is well-pleaded and the defendants make no effort to respond, the likelihood of disputed facts is very low. *See Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01472-DOC-KES  Date: January 8, 2026

Page 9

Here, Plaintiff provided a well-pleaded complaint and Defendants failed to dispute the allegations. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." *PepsiCo*, 238 F. Supp. 2d at 1177 (citing *Televideo Sys., Inc.*, 826 F.2d at 917-18). Accordingly, this factor weighs in favor of default judgment.

### 5. Possibility of Excusable Neglect

The sixth *Eitel* factor considers the possibility that a defendant's default resulted from excusable neglect. *Vogel*, 992 F. Supp. 2d at 1013; *see also Eitel*, 782 F.2d at 1471-72. Due process requires that interested parties be given notice of the pendency of the action and be afforded an opportunity to present their objections before a final judgment is rendered. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). While there is always a possibility that a defendant might appear and claim excusable neglect, where the defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion," this factor favors entry of default judgment. *Shanghai Automation Instrument Co. Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

Here, Defendants were served with the Complaint and the request for default. Defendants have never appeared or filed an answer or other response. The Court therefore finds that the possibility of excusable neglect is low.

### 6. Strong Policy Favoring Decision on the Merits

The seventh *Eitel* factor requires the Court to consider the strong judicial policy favoring decisions on the merits before granting default judgment. "Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. But the mere existence of Rule 55(b) "indicates that this preference, standing alone, is not dispositive." *Pepsico*, 238 F. Supp. 2d at 1177 (citation omitted). Rule 55(a) allows a court to decide a case before the merits are heard if defendant fails to appear and defend. *Id.* ("Defendant's failure to answer plaintiffs' complaint makes a decision on the merits impractical, if not impossible."). Since Defendant has not responded to Plaintiffs' Complaint, the Court is not precluded from entering judgment.

Given the infringement of Plaintiff's intellectual property and the strong interest in deterring continuing fraudulent misrepresentations, the seventh *Eitel* factor weighs in favor of granting default judgment against the Defendant.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:25-cv-01472-DOC-KES                                              Date: January 8, 2026

Page 10

### D. Remedies

Having determined that default judgment is proper, the Court turns to the remedies sought. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Once "[i]njury is established[,] . . . plaintiff need prove only that the compensation sought relates to the damages that naturally flow from the injuries pled." *See Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003). While the Court is not required to issue findings of fact as to liability, it must do so as to damages. *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990). The Court can consider "declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable" when assessing whether "there is an adequate basis for the damages awarded in the default judgment." *Xerox Corp. v. Am. Mail Ctrs., Inc.*, 2016 WL 10834102, at *2 (C.D. Cal. Oct. 14, 2016) (quoted citation omitted).

Here, the damages that Plaintiff seeks total $1,799.90 which is extraordinary reasonable in light of the circumstances.

Plaintiff also seeks post-judgment interest. For post-judgment interest, "[u]nder 28 U.S.C. § 1961, post judgment interest is allowed 'on any money judgment in a civil case recovered in a district court.'" *Santa Cerritos, Inc. v. Penrod*, No. 8:22-cv-00030-MEMF-JDE, 2024 WL 3292937 at *7 (C.D. Cal. Apr. 26, 2024) (quoting 28 U.S.C. § 1961(a)). "Post judgment interest is 'calculated from the date of the entry of the judgment, at a rate equal to the weekly 1-year constant maturity Treasury yield,' and interest is computed daily." *Id.* (quoting §§ 1961(a), (b)) Within seven (7) days of the date of this Order, Plaintiff shall file a Proposed Judgment detailing the applicable interest.

Finally, Plaintiff also seeks a permanent injunction. The Court finds that an injunction is warranted for the reasons stated above.

### IV. Disposition

For the foregoing reasons, the Court **GRANTS** the Motion.

In particular, the Court **ENTERS JUDGMENT** in favor of Plaintiff and against Defendant Ramzi Alafandi in the total amount of $1,799.90. Plaintiff is also entitled to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:25-cv-01472-DOC-KES                               Date: January 8, 2026

Page 11

post-judgment interest. Within seven (7) days of the date of this Order, Plaintiff is **ORDERED** to file a Proposed Judgment detailing the applicable interest consistent with this Order's reasoning.

Furthermore, Defendants are **ENJOINED** from engaging in any of the following conduct:

1. Creating and publishing any documents that utilize the "Getac" name;
2. Listing themselves or others as officers, owners, directors, employees, or anyone else affiliated with Getac;
3. Publishing false documents purported to be from Getac, including by uploading any documents utilizing the name Getac to any website, including state agencies such as the California Secretary of State, the Mississippi Secretary of State, the Missouri Secretary of State, and the Florida Division of Corporations; and
4. Impersonating Getac in anyway, including representing that they are affiliated with Getac.

In addition, all defendants are **ORDERED** to immediately cause any fraudulent business filings made by them relating to Getac to be removed, including but not limited to any filings made with the California Secretary of State, the Mississippi Secretary of State, the Missouri Secretary of State, and the Florida Division of Corporations.

Accordingly, the hearing scheduled for January 12, 2026, is **VACATED**.

The United States Marshals Service is **ORDERED** to serve this Order on each of Defendants.

MINUTES FORM 11                                        Initials of Deputy Clerk: pd/kdu

CIVIL-GEN

**Cc: USMS**